FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

JUN 20  A 9: 49
2000
LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BOLLINGER QUICK REPAIR, L.L.C.**                    **CIVIL ACTION**

**VERSUS**                                             **00-308**

**LE PELICAN MV, ET AL.**                              **SECTION "T"(4)**

Before the Court are three separate motions, namely, a Motion for Interlocutory Sale of Vessel, Motion for Summary Judgment, and Motion to Deem Dockage Charges *Custodia Legis* Expense, all filed on behalf of the plaintiff, Bollinger Quick Repair, L.L.C. ("Bollinger"). These matters were set for hearing on May 24, 2000, and submitted for the Court's consideration on the briefs only. The Court, having considered the memoranda filed, the evidence submitted, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

### ORDER AND REASONS

## I. BACKGROUND:

The M/V LE PELICAN is a replica of the 17th century war vessel of the third rank. Bollinger entered into a maritime contract for repairs and improvements of the vessel with its owner, Le Pelican, L.L.C. ("Le Pelican"). Despite amicable demand, the owner has failed to pay the invoices in the amount of $87,585.00 for repairs, together with wharfage fees in the amount of $32,890.00, as of April 11, 2000, for a total of $120,015.00, with wharfage fees continuing to accrue at a rate of $115.00 per diem. As a result of the outstanding indebtedness, Bollinger filed this suit


DATE OF ENTRY
JUN 2 0 2000

1


Fee_____
Process_____
X /Dktd____
V CtRmDep_
Doc.No.____

asserting that all services supplied to the M/V LE PELICAN were necessaries pursuant to the Federal Maritime Lien Act, 46 U.S.C. §31301 et seq. The vessel was arrested on February 1, 2000, and Bollinger was substituted as custodian of the vessel. Since that time, the owner of the vessel has failed to secure the vessel's release pursuant to Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. The plaintiff now seeks an Order for Interlocutory Sale of the Vessel, Summary Judgment in the amount of its domestic necessary lien, together with pre-judgment interest and other equitable relief, and an Order deeming the Dockage Charges a *Custodia Legis* Expense.

## II. MOTION FOR INTERLOCUTORY SALE OF VESSEL:

Bollinger contends that it is the holder of a preferred maritime lien on the M/V LE PELICAN and that it is entitled to an order directing the interlocutory sale of the vessel pursuant to the criteria set forth in Rule E(9)(b) of the Supplemental Rules for Certain Admiralty and Maritime Claims and the Federal Rules of Civil Procedure. First, Bollinger submits that the owner of the vessel has failed to secure its release and there is no indication that it will secure the release. Next, it is asserted that the expenses are mounting at a daily rate of $115.00, together with incidental expenses. These expenses will diminish the value of the vessel pending sale of the vessel. Finally, by sitting idle, the vessel is susceptible to decay and deterioration.

Le Pelican argues that it has been actively engaged in efforts to conduct a private sale of the vessel and those efforts to locate a third party buyer are continuing; as such, there has been no unreasonable delay. Next, defendant contends that the wharfage fees being incurred are not disproportionate to the value of the vessel which is estimated at two million dollars. It is further

asserted that to justify an interlocutory sale based upon deterioration or decay, the damage must be occasioned "by being detained in custody pending the action," which this Court must make a finding of fact, based upon evidence submitted that the vessel has suffered such damage and that the damage is likely to continue.  No such evidence has been presented herein to justify an interlocutory sale.

Supplemental Rule E(9)(b) provides:

> If property that has been attached or arrested is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expense of keeping the property is excessive or disproportionate, or if there is unreasonable delay in securing the release of property, the court,...may order the property or any portion thereof to be sold;

Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure Rule E.  "In order to prevail, the lienors need only show one of the three criteria."  Merchants National Bank of Mobile v. Dredge General G.L. Gillespie, 663 F.2d 1338 (5th Cir. 1981); see also Silver Star Enterprises, Inc. v. M/V SARAMACCA, 19 F.3d 1008 (5th Cir. 1994); and Triton Container International Ltd. v. Baltic Shipping Co., 1995 WL 341579 (E.D. La. 1995). In this case, plaintiff has argued that all three of the criteria have been met, thus justifying an Order of this Court authorizing the sale of the vessel.

The Order for issuance of a warrant for the arrest of the M/V LE PELICAN was signed on January 31, 2000.  The return of service of warrant of arrest upon the M/V LE PELICAN shows that it was served on February 2, 2000.  As such, over four months have lapsed since the arrest of the vessel.  In Silver Star, the United States Court of Appeals for the Fifth Circuit affirmed the order of an interlocutory sale of a vessel, holding that seven months constituted an unreasonable delay in securing the release of property. Silver Star, supra.  In that case, in addition to citing to Merchants

3

Nat'l Bank which held that failure to secure the release of the vessel eight months after its arrest

constituted an unreasonable delay, the Court of Appeals cited with approval a decision by the United

States District Court for the Western District of Washington that held that failure to secure the

release of a vessel during the four months after arrest constituted an unreasonable delay. Silver Star

citing Ferrous Fin. Serv. Co. v. O/S Arctic Producer, 567 F.Supp. 400, 401 (W.D. Wash. 1983).

Therefore, in light of this jurisprudence, it is the finding of this Court that there has been an

unreasonable delay in securing the release of the vessel, and this Court may order an interlocutory

sale pursuant to Rule E(9)(b).  As such, the Court need not address the other arguments set forth

concerning deterioration, decay, or injury to the vessel pending the action, and/or

excessive/disproportionate expense in keeping the property.

## III. MOTION FOR SUMMARY JUDGMENT:

Bollinger contends that the facts are clear.  Bollinger provided repair services and wharfage

to the M/V LE PELICAN in United States ports.  The owner has failed to pay for said repairs and

fees amounting to $121,280.00, as of April 18, 2000, with wharfage fees continuing to accrue at a

rate of $115.00 per day.  The work performed constitutes "necessaries" as defined by 46 U.S.C.

§31301 and the Fifth Circuit and as such, Bollinger has a domestic necessary lien pursuant to

Supplemental Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims and

the Federal Maritime Lien Act, including 46 U.S.C. §31342.  As such, Bollinger submits that it is

entitled to summary judgment.

Le Pelican however argues that no maritime lien exists for some portion of those services as

the lien includes amounts for services which were unauthorized and/or constitute unreasonable

charges for the services provided by Bollinger, or alternatively, that the amount of the lien should be reduced and subject to setoff. Specifically, Le Pelican contends that the wharfage rate of $115.00 per day is unreasonable and excessive and further that the signed quotation and authorization to perform the repairs contains no reference to any wharfage or the rate at which it would be charged. Additionally, Le Pelican objects to the towage charges as the quotation and authorization did not reference these towage fees. Moreover, Le Pelican contends that it is entitled to a setoff for the damages incurred, as well as, the equipment stolen when the M/V LE PELICAN was being towed to Bollinger's shipyard. Defendant submits that as issues of material fact exist, summary judgment is not appropriate.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Stults v. Conoco, 76 F.3d 651 (5th Cir. 1996), (citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 912-13 (5th Cir.) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986) (emphasis supplied); Tubacex, Inc. v. M/V 1794Risan, 45 F.3d 951, 954 (5th Cir. 1995).

5

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." <u>Matsushita Elec. Industrial Co.</u>, 475 U.S. at 588. Finally, the court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

Rule C of the Supplemental Rules for Certain Maritime and Admiralty Claims and the Federal Maritime Lien Act, 46 U.S.C. §31342 provides that:

> (a)...a person providing necessaries to a vessel on the order of the owner or person authorized by the owner -
> (1) has a maritime lien on the vessel;
> (2) may bring a civil action *in rem* to enforce the lien; and
> (3) is not required to allege or prove any action that credit was given to the vessel.

In order to establish a maritime lien for necessaries, a supplier must show (1) that the goods or services were "necessaries"; (2) that the charges are reasonable in amount; and, (3) that they were ordered by someone with the appropriate authority. See <u>Belcher Co. of Ala., Inc. v. M/V MARATHA MARINER</u>, 724 F.2d 1161, 1164 (5th Cir. 1984) and <u>Farwest Steel Corp. v. Barge SEA SPAN 241</u>, 769 F.2d 620, 623 (9th Cir. 1985). Section 31301 of the Federal Maritime Lien Act defines "necessaries" as "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. §31301. In <u>Equilease Corp. v. M/V SAMPSON</u>, 793 F.2d 598 (5th Cir. 1986), the Fifth Circuit defined "necessaries" as:

> most goods and services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function. Necessaries are the things that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged. These "things" may be money, labor, skills, and personal services as well as materials. It is the present, apparent want of the

6

vessel, not the character of the thing applied, which makes it a necessary.

The defendant does not dispute that a maritime lien exists in Bollinger's favor, but rather that "no maritime lien exists for *some portion* of the services as the lien includes amounts for services which were unauthorized and/or constitute unreasonable charges... or alternatively that the amount of that lien should be reduced and subject to setoff." (Defendant's Opposition to Motion for Summary Judgment pp. 1-2). Specifically, the defendant contests the wharfage and towage fees. In addition, the defendant submits that the invoice dated October 20, 1999, includes an additional charge for shore power connections and services which were not included in the original quotation of March 31, 1999. As such, it is the opinion of this Court that no genuine issues of material fact exist with regard to the fact that Bollinger did in fact perform repairs to the vessel which meet the definition of "necessaries" in which it has not been paid. It is further undisputed that these repairs and services were performed in the United States. Additionally, the repairs and services which are not disputed were clearly authorized by a person of authority, namely William Juliano, President of Le Pelican, L.L.C. Accordingly, the amount of said repairs which are not in dispute total $78,225.00. This amount **excludes** the towage fees amounting to $9,110.00 and the wharfage fees invoiced in the amount of $17,595.00 along with the wharfage fees accruing daily at the rate of $115.00 per day, together with the $250.00 in shore power and services, which are subject to dispute.

This ruling in no way precludes the award of said fees at a later date, nor is it any indication that these fees are unreasonable and/or unauthorized. This Court is simply stating that issues of fact exist with regard to these items such that summary judgment is not appropriate at this time based upon the evidence submitted.

## IV. MOTION TO DEEM DOCKAGE CHARGES *CUSTODIA LEGIS* EXPENSE:

Wharfage fees in the amount of $8,510.00 have accrued since the arrest of the vessel. Bollinger contends that the wharfage provided after the arrest of the M/V LE PELICAN should be deemed a *custodia legis* expense. Bollinger has provided a safe berth contributing to the preservation of the vessel. Le Pelican opposes this motion on the grounds that the rate required by Bollinger is unreasonable and excessive, and that Bollinger has failed to show that the amount and rate requested are necessary or actual expenses incurred to preserve or maintain the M/V LE PELICAN.

"Services or property advanced to preserve and maintain the vessel under seizure, furnished upon authority of the court . . . should be allowed as *custodia legis* expenses." Associated Metals & Minerals v. ALEXANDER'S UNITY MV, 41 F.3d 1007, 1018 (5th Cir. 1995) (citing General Elec. Credit & Leasing Corp. v. Drill Ship Mission Exploration, 668 F.2d 311, 816 (5th Cir. 1982) and New York Dock Co. v. The Poznan, 274 U.S. 117, 121, 47 S.Ct. 482, 484, 71 L.Ed. 955 (1927)). Moreover, the court may order *custodia legis* expenses to be paid if "equity and good conscience so require." Id.

The Court first notes that Le Pelican does not dispute that dockage fees are considered a *custodia legis* expense in that such service "preserve[s] and maintain[s] the vessel under seizure." Instead, defendant contends that the $115.00 per day rate is unreasonable and/or excessive. It is the finding of this Court that the dockage fees in the amount of $115.00 per day constitutes a valid *custodia legis* expense and said amount is reasonable. The plaintiff is in the ship repair business and customarily charges a fee for dockage. While defendant contests the authorization for such a charge, the $115.00 per diem rate was charged prior to the arrest of the vessel and has continued thereafter.

This Court cannot say that this is an unreasonable charge, especially in light of the fact that had the vessel remained under the custody of the United States Marshals, the vessel would be charged a "keeper's fee" in the amount of $360.00 per day. The per diem being assessed by the plaintiff is approximately one-third (1/3) the amount charged by the United States Marshals.

This Court further notes that in the case of Humphrey Railways, Inc. v. F/V NILS S, 603 F.Supp. 95 (E.D. Va. 1984) the evidence revealed that $22 per day was the amount charged for the wharfage of vessels in general and was the amount charged for the vessel seized prior to the entry of the court order; however, after the seizure $200 per day was being charged for wharfage. The Court in Humphrey found that the $200 per day rate was excessive as no services of any kind, nature or description were rendered to the vessel after the seizure that were in any way different from the services being rendered before the attachment when the fee of $22 per day was being charged. Id. As such, the Court found as a fact that a normal, fair, reasonable rate for wharfage and custodial expense was the charge that Humphrey itself set. Id. Furthermore, the Court made clear that while it found $200 per day to be excessive in that case, it was not saying that such a fee would not be reasonable in another case with different circumstances. Id.    In this case, there was no change in the dockage fee pre-seizure compared to post-seizure. Le Pelican, who has failed to secure the release of the vessel and failed in anyway to further reduce the costs associated with the seizure by having another custodian appointed, has no right to park its vessel at the plaintiff's business free of charge. As this Court deems $115.00 to be a reasonable charge, the daily dockage fee in this amount shall be deemed a *custodia legis* expense.

Accordingly,

**IT IS ORDERED** that the Motion for Interlocutory Sale of Vessel, filed on behalf of the

plaintiff, Bollinger Quick Repair, L.L.C., is hereby **GRANTED.**

      **IT IS FURTHER ORDERED** that the Motion for Summary Judgment, filed on behalf of

the plaintiff, Bollinger Quick Repair, L.L.C., is hereby **GRANTED IN PART.**  Partial Summary

Judgment is hereby entered in favor of the plaintiff, Bollinger Quick Repair, L.L.C., and against the

defendant, Le Pelican L.L.C., in the amount of $78,225.00.

      **IT IS FURTHER ORDERED** that the Motion to Deem Dockage Charges *Custodia Legis*

Expense, filed on behalf of the plaintiff, Bollinger Quick Repair, L.L.C. is hereby **GRANTED.**

      New Orleans, Louisiana, this _____ day of June, 2000.

                                     _____

                                        **G. THOMAS PORTEOUS, JR.**
                                        **UNITED STATES DISTRICT JUDGE**